

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JEFFREY R. BECKETT,<br><br>       Plaintiff,<br><br>v.<br><br>BRINX RESOURCES, LTD., a Nevada corporation; KENNETH A. CABIANCA, an individual; and GEORGIA KNIGHT, an individual,<br><br>       Defendants. | 3:13-CV-00342-LRH-WGC<br><br>ORDER |

      Before the Court is Defendant Brinx Resources, Ltd.'s ("Brinx") Motion to Dismiss. Doc. #20.[1] Plaintiff Jeffrey R. Beckett ("Beckett") filed a Response (Doc. #25), to which Brinx replied (Doc. #27). In accordance with the Court's Order granting Beckett leave to file a Sur-Reply, Beckett filed a Sur-Reply. Doc. #38.

      Also before the Court is Defendants Kenneth A. Cabianca ("Cabianca") and Georgia Knight's ("Knight") Motion to Dismiss. Doc. #33. Beckett filed a Response (Doc. #35), to which Cabianca and Knight replied (Doc. #37).

      Also before the Court is Brinx's Motion for Attorneys' Fees and Costs. Doc. #21. Beckett filed a Response (Doc. #26), to which Brinx replied (Doc. #28).

---

[1] Refers to the Court's docket number.

I.      **Factual Background**

Brinx is a publicly traded oil and gas production and exploration company. Doc. #17, ¶¶ 13, 14. Since Brinx's incorporation in 1998, Cabianca has been the CEO, President, and Chairman of the Board of Directors at Brinx. *Id.* at ¶ 3. Cabianca appointed Knight to the Board of Directors in 2012. *Id.* at ¶ 21. Beckett owns 2,826,335 Common shares of Brinx stock or approximately 11.5% of the outstanding Common stock in Brinx. *Id.* at ¶ 26. Cabianca owns 2,554,702 Common shares of Brinx stock or approximately 10.4% of the outstanding Common stock in Brinx. *Id.* at ¶ 27.

Beckett alleges that on February 10, 2012, Cabianca caused Brinx to issue 500,001 shares of "Series A Preferred Stock" at par value to Cabianca. *Id.* at ¶ 28. In doing so, Cabianca obtained certain "extraordinary" rights as a shareholder, thereby ensuring his complete dominion and control over Brinx's affairs for his sole benefit. *Id.* at ¶¶ 29, 30. Beckett further alleges that for the entire period of his ownership interest in Brinx, Cabianca has treated Brinx as his personal "piggy bank." *Id.* at ¶ 32. On April 16, 2013, Beckett filed a complaint in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, setting forth various causes of action, including those set forth in the present action. *Beckett v. Brinx, et. al*, Case No. CV13-00834. In conjunction therewith, Beckett alleges that Brinx and Cabianca willfully failed to inform Brinx's stockholders and the public at large of the aforementioned complaint. *Id.* at ¶ 35. Beckett further alleges that this is part of a pattern of omitting material facts that would affect a potential investor's decision to purchase or sell Brinx securities. *Id.* at ¶ 36; *see also id.* at ¶ 37 (specifying Cabianca's actions in this regard).

On June 26, 2013, Beckett filed a Complaint before this Court alleging five causes of action for violations of (1) Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Securities Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; (2) Section 20a of the Securities Act, 15 U.S.C. § 78t(a); (3) Section 409 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 78m(l); (4) Section 11 of the Securities Act, 15 U.S.C. § 77k(a); and (5) Section 15 of the Securities Act,

15 U.S.C. § 77o.  Doc. #1.  Thereafter, the parties stipulated that Beckett may file a First Amended Complaint ("FAC") and that Beckett's fourth and fifth causes of action shall be dismissed with prejudice.  Doc. #14.  On August 28, 2013, Beckett filed a FAC, alleging violations of (1) Section 10(b) and Rule 10b-5 of the Securities Act, (2) Section 20a of the Securities Act, and (3) Section 409 of the Sarbanes-Oxley Act.  Doc. #17.  On September 11, 2013, Brinx filed a Motion to Dismiss for failure to state a claim upon which relief can be granted.  Doc. #20.  Also on September 11, 2013, Brinx filed a Motion for Attorney's Fees and Costs.  Doc. #21.  On October 29, 2013, Cabianca and Knight filed a Motion to Dismiss.  Doc. #33.

## II.     Legal Standard

Defendants seek dismissal of Beckett's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard.  *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008).  That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference, based on the Court's judicial experience and common sense, that the defendant is liable for the misconduct alleged.  *See id.* at 678-79.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's

3

1  liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at
2  678 (internal quotation marks and citation omitted).

3  In reviewing a motion to dismiss, the Court accepts the facts alleged in the complaint as
4  true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of
5  the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret*
6  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original)
7  (internal quotation marks omitted). The Court discounts these allegations because "they do nothing
8  more than state a legal conclusion—even if that conclusion is cast in the form of a factual
9  allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to
10 dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be
11 plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

12 **III.    Discussion**

13     **A.    Violation of Section 10(b) and Rule 10b-5—All Defendants**

14 Section 10(b) of the Securities Act provides that it is unlawful "[t]o use or employ, in
15 connection with the purchase or sale of any security registered on a national securities exchange or
16 any security not so registered . . . any manipulative or deceptive device or contrivance . . . ."
17 15 U.S.C. § 78j(b). Pursuant to this section, the Securities and Exchange Commission ("SEC")
18 promulgated Rule 10b-5, which makes it unlawful, among other things, "[t]o make any untrue
19 statement of a material fact or to omit to state a material fact necessary in order to make the
20 statements made, in the light of the circumstances under which they were made, not misleading."
21 17 C.F.R. § 240.10b-5(b). To state a claim for securities fraud, a plaintiff must plead: "(1) a
22 material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the
23 misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the
24 misrepresentation or omission; (5) economic loss; and (6) loss causation." *Thompson v. Paul*, 547
25 F.3d 1055, 1061 (9th Cir. 2008) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
26 552 U.S. 148, 157 (2008)).

In addition to the pleading standards set forth in *Twombly*, 550 U.S. 544, 570 (2007), a plaintiff asserting a claim for securities fraud under Section 10(b) and Rule 10b-5 must meet the particularity requirements of Federal Rule of Civil Procedure 9(b), and the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u–4 *et seq*. *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The PSLRA further requires plaintiffs to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" to allege the element of falsity adequately and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" to allege the element of scienter. 15 U.S.C. § 78u-4(b)(1), (2); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Finally, it is well established that Section 10(b) and Rule 10b-5 are directed at the type of misrepresentation or fraudulent practice associated with the sale or purchase of securities, rather than the fraudulent mismanagement of corporate affairs and breaches of fiduciary duty by corporate insiders that result in fraud upon those who are not purchasers or sellers. *See Birnbaum v Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir. 1952), *cert. denied*, 343 U.S. 956 (1952). Accordingly, only those persons claiming damages in connection with the purchase or sale of securities may bring an action under Section 10(b) or Rule 10b-5. *Id*. In *Blue Chip Stamps v. Manor Drug Stores*, the Supreme Court affirmed that "[t]he *Birnbaum* rule . . . permits exclusion prior to trial of those plaintiffs who were not themselves purchasers or sellers of the stock [affected by the alleged violation of Section 10(b) and Rule 10b-5]." 421 U.S. 723, 742-49 (1975). Specifically, "shareholders . . . who suffered loss in the value of their investment due to corporate or insider activities in connection with the purchase of sale of securities which violate Rule 10b-5" are barred by the *Birnbaum* rule from bringing suit under Section 10(b) or Rule 10b-5. *Id*. at 737-37.

///

Because Beckett has failed to plead facts that his alleged loss was related to or connected with the purchase or sale of any securities affected by Cabianca and Knight's alleged fraud, he has no standing under Section 10(b) or Rule 10b-5 to bring this action. Specifically, Beckett fails to assert that *he* purchased or sold securities in connection with any of the allegedly fraudulent activity, including, but not limited to, the fraudulent issuance of Series A Preferred Stock to Cabianca. Rather, Beckett acquired his stock in Brinx before, and held it throughout, Cabianca and Knight's alleged fraud. Moreover, Beckett's argument that he pled that "the fraud consisted of a 'pattern of omitting material facts' that would affect an investor's decision to purchase and sell Brinx's publicly-traded securities, including facts concerning a variety of actions, only one of which was the issuance of the Series A Preferred Stock by Brinx to [] Cabianca and the remainder of which involved [] Cabianca, with the assistance of [Knight], looting the company and otherwise treating it as his personal piggy bank" is similarly unavailing. *See* Doc. #38, p. 3 (citing Doc. #17, ¶¶ 32, 34-37, Ex. 1). Beckett never alleges that he purchased or sold any securities in connection with this allegedly fraudulent activity.

Finally, the cases on which Beckett relies to undermine the *Birnbaum* rule are misplaced. *In re Tyco Intern., Ltd.*, No. MDL 02-1335-B, 02-266-B., 2004 WL 2348315 (D.N.H. Oct. 14, 2004), does not discuss the *Birnbaum* rule at all. Rather, the district court appears to have concluded, albeit somewhat cryptically, that plaintiff need not allege that *defendant* engaged in the purchase or sale of securities in order to state a claim. *Id.*, at *5. Moreover, the Ninth Circuit case on which *Tyco* relies clarifies this point. *See McGann v. Ernst & Young*, 102 F.3d 390, 392-93 (9th Cir. 1996 (concluding that the "in connection with" language does limit *liability* under Section 10(b) to only those who actually trade securities; rather, a defendant may be primarily liable under Section 10(b) "whenever assertions are made . . . in a manner reasonably calculated to influence the investing public") (citing *Wessel v. Buhler*, 437 F.2d 279, 282 (9th Cir. 1971)) (emphasis added). Neither case stands for the proposition that a plaintiff need not purchase or sell securities in connection with the alleged fraud in order to state a claim. Because it does not appear that Beckett

6

can assert any set of facts that would entitle him to relief for violations of Section 10(b) and Rule 10b-5, the Court shall dismiss his first cause of action against all Defendants with prejudice for failure to state a claim.[2]  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment").

### B.   Violation of Section 20a—Defendants Cabianca and Knight

In order to state a claim for violation of Section 20a of the Securities Act, 15 U.S.C. § 78t(a), a plaintiff must allege: (1) a primary violation of any provision of the Securities Act, and (2) that the defendant(s) exercised actual power or control over the primary violator.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003), *cert. denied*, 540 U.S. 966 (2003).  As Beckett failed to state a claim for a primary violation of the Securities Act, the Court shall dismiss his second cause of action against Defendants Cabianca and Knight with prejudice.

### C.   Violation of the Sarbanes-Oxley Act—All Defendants

Beckett clarified in his Response that his third cause of action asserts a claim for violation of subsection (l) of 15 U.S.C. § 78m ("Section 409").[3]  *See* Doc. #25, p. 14.  Section 409, entitled "Real time issuer disclosures," provides:

> Each issuer reporting under subsection (a) of this section or section 78*o*(d) of this title shall disclose to the public on a rapid and current basis such additional information concerning material changes in the financial condition or operations of the issuer, in plain English, which may include trend and qualitative information and graphic presentations, as the Commission determines, by rule, is necessary or useful for the protection of investors and in the public interest.

///

---

[2] The Court's dismissal with prejudice of Beckett's direct cause of action under Section 10(b) and Rule 10b-5 in no way affects his ability to bring a derivative action under Section 10(b) and Rule 10b-5 on behalf of Brinx.

[3] Section 409 of the Sarbanes-Oxley Act is codified as subsection (l) of 15 U.S.C. § 78m.

Here, the parties have not identified any judicial authority addressing the availability of a private right of action under Section 409, nor is the Court aware of any. However, it is well established that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). In determining whether a private right of action exists where the federal statute in question does not expressly provide for one, courts focus on Congressional intent to provide a remedy. *Id.* (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991)). Legislative intent is determined primarily through an analysis of the text and structure of the statute. *Id.* at 288.

Here, the text of Section 409 does not contain any "rights creating" language. Nor is there any other indication that Congress intended to create a private right of action in favor of shareholders for violations of Section 409. As the district court noted in *Srebnik v. Dean*, Section 306 explicitly provides that "an action to recover profits in accordance with the subsection may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and on behalf of the issuer if the issuer fails or refuses to bring such action . . . ." Civil Action No. 05-cv-01086-WYD-MJW, 2006 WL 2790408, at *5 (D. Colo. Sept. 26, 2006) (citing 15 U.S.C. § 7244(a)(2)(B)). Moreover, Section 806 specifically provides that a whistleblower may file an action in federal court if his or her employer takes an illegal action in retaliation for lawful and protected conduct. 18 U.S.C. § 1514A. Sections 409 and 806 demonstrate "that when Congress intended to create a private remedy, it did so explicitly and in unmistakable terms." *Srebnik*, 2006 WL 2790408, at *5 (quoting *Kogan v. Robinson*, 432 F. Supp. 2d 1075, 1081-82 (S.D. Cal. 2006) (citing *Touche Ross & Co.*, 442 U.S. at 572)) (internal quotation marks omitted). In contrast, Section 409 contains no such language, the natural inference of which is that Congress did not intend to create a private right of action in favor of Beckett. Accordingly, the Court shall dismiss Beckett's third cause of action against all Defendants with prejudice for failure to state a claim.

### IV. Motion for Attorneys' Fees and Costs

Lastly, Brinx argues that Beckett and/or his counsel are subject to sanctions pursuant to 28 U.S.C. § 1927, the Court's inherent power to curb abusive and frivolous litigation, and 15 U.S.C. § 78u-4(c), and requests that the Court award it all attorneys' fees and costs incurred in the defense of Beckett's claims. Doc. #21.

#### A. Section 1927

Title 28 U.S.C. § 1927 provides that an attorney in federal court "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under prevailing Ninth Circuit law, however, section 1927 cannot be applied to an initial pleading. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). Brinx's argument that the FAC is Beckett's third attempt to bring claims under the Securities Act is both inaccurate and disingenuous. First, the Court declines to regard Beckett's State court complaint as the initial pleading in this Case. The federal claims at issue were dropped from Beckett's State court complaint prior to any adjudication on the merits and re-filed before this Court. Second, because Brinx stipulated to the filing of a FAC, it cannot now complain that Beckett unreasonably or vexatiously multiplied the proceedings in this case. *See* Doc. #14 (August 23, 2013 Order approving parties stipulation regarding amendment of complaint). The Court notes further that it was Brinx, not Beckett, who improperly raised a new argument in its Reply brief, thereby necessitating a Sur-Reply from Beckett and causing increased cost to him. Accordingly, the Court finds that sanctions against Beckett pursuant to section 1927 are not warranted.

#### B. The Court's Inherent Powers

"[S]anctions imposed under the district court's inherent authority require a bad faith finding." *Braunstein v. Arizona Dept. of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012) (quoting *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010)). Here, there is no evidence in the record to support a finding of bad faith by Beckett or his counsel.

9

To the contrary, it appears that Beckett's counsel acted with utmost professionalism in attempting to communicate with Defendants' counsel. *See* Doc. #26, Ex. 1. On the other hand, it was Defendants' counsel that refused to accept service on behalf of their clients, Cabianca and Knight, thereby frustrating Beckett's counsel's efforts at cooperation. *See id.* Accordingly, the Court declines to impose sanctions against Beckett pursuant to its inherent powers.

**C.     Section 78u-4(c)**

Section 78u-4(c) provides:

> In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.
>
> . . .
>
> If the court makes a finding . . . that a party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure. Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.

There is a rebuttable presumption in favor of attorneys' fees and costs "for substantial failure of any complaint to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(c)(3)(ii). Under Rule 11(b), an attorney is subject to sanctions "when he [or she] presents to the court 'claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 675-76 (9th Cir. 2005) (quoting Fed. R. Civ. Proc. 11(b)(2)). While subjective bad faith is not a required element under Rule 11, sanctions are nevertheless appropriate where an attorney lacks "a 'good faith argument' for his or her view of what the law is, or should be." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829-31 (9th Cir. 1986). Whether an attorney has a good faith belief in the merit of a legal argument is determined by objective reference to a competent attorney after "reasonable inquiry." *Id.* at 831.

10

For the reasons set forth in the dismissal portion of this Order, Beckett's attorney should have recognized after a "reasonable inquiry" that his Section 10(b) and Rule 10b-5 claims were not actionable under existing law.  Nor were the claims warranted under any "good faith argument for the extension, modification, or reversal of existing law."  As the Court previously noted, it is well established that Section 10(b) and Rule 10b-5 are directed at the type of misrepresentation or fraudulent practice associated with the sale or purchase of securities, rather than the fraudulent mismanagement of corporate affairs and breaches of fiduciary duty by corporate insiders that result in fraud upon those who are not purchasers or sellers.  Supreme Court precedent flatly rejects any argument to the contrary.  *See Blue Chip Stamps*, 421 U.S. at 742-49.  As such, the Court finds that a competent attorney would have been aware of this long-established principle after reasonable inquiry.

While sanctions may be warranted under these circumstances, the Court declines to issue them here because Brinx did not comply with the required notice provisions of Rule 11.  It is widely recognized that "before sanctions may be imposed upon a party there must be 'sufficient, advance notice of exactly which conduct was alleged to be sanctionable.'" *Foster v. Wilson*, 504 F.3d 1046, 1052 (9th Cir. 2007) (quoting *In re DeVille*, 361 F.3d 539, 549 (9th Cir. 2004)); *see also Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 144 (2d Cir. 2000) ("[t]he purpose of particularized notice is to put counsel on notice as to the particular factors that he must address if he is to avoid sanctions") (internal quotation marks omitted).  Just as Beckett failed to appreciate the significance of the *Birnbaum* rule, Brinx also failed entirely to even mention either *Birnbaum* or *Blue Chip Stamps* in its Motion to Dismiss or its Motion for Attorneys' Fees, both of which were filed on September 11, 2013.  Doc. #20; Doc. #21.  Only in its Reply to its Motion to Dismiss did Brinx bother to argue that Beckett's Section 10(b) and Rule 10b-5 claims were precluded by the *Birnbaum* rule, thereby necessitating a Sur-Reply from Beckett.  *See* Doc. #27.  Accordingly, the Court declines to sanction Beckett for what was obviously a serious oversight by both parties to this litigation.  As to Brinx's remaining arguments for dismissal of Beckett's Section 10(b) and

Rule 10b-5 claims and its Section 409 claim,[4] the Court finds that any additional deficiencies in the FAC are not so glaring as to warrant sanctions under Rule 11. Accordingly, Brinx's Motion for Attorneys' Fees and Costs shall be denied.

IT IS THEREFORE ORDERED that Brinx's Motion to Dismiss (Doc. #20) is GRANTED.

IT IS FURTHER ORDERED that Cabianca and Knight's Motion to Dismiss (Doc. #33) is GRANTED.

IT IS FURTHER ORDERED that Brinx's Motion for Attorney's Fees and Costs (Doc. #21) is DENIED.

IT IS FURTHER ORDERED that Beckett's First Amended Complaint (Doc. #17) shall be DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 21st day of March, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[4] In its Motion to Dismiss, Brinx wrongly identified the statute under which Beckett brought it's third cause of action. *See* Doc. #20, pp. 8-9.